UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID CRUZ,

                              Plaintiff,

              - against -

WYCKOFF HEIGHTS MEDICAL CENTER and
JOHN LEISON, Director of Radiology,

                              Defendants.

**OPINION AND ORDER**

13 Civ. 8355 (ER)

Ramos, D.J.:

      Plaintiff David Cruz brings this action against Wyckoff Heights Medical Center

("Defendant" or "Wyckoff") and John Leisen, former Director of Radiology (together,

"Defendants"), alleging ten counts of employment discrimination on the basis of his medical

condition and retaliation.  Plaintiff brings his claims pursuant to the Americans with Disabilities

Act ("ADA"), Family and Medical Leave Act of 1993 ("FMLA"), New York State Human

Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").  Before this

Court is Defendants' motion for summary judgment.  For the reasons discussed below,

Defendants' motion is GRANTED.

I.   **Background**[1]

In 2003, Wyckoff hired Plaintiff as an X-ray Technologist in the Radiology Department. Amended Complaint ("Compl.") (Doc. 27) ¶ 6. His responsibilities included taking x-rays, engaging with patients, and interacting with and assisting other Wyckoff staff. Def. 56.1 ¶ 5. Plaintiff suffers from ulcerative colitis, a serious medical condition that can cause loss of blood, weakness, and serious bodily pain. Compl. ¶ 8. As a result of this condition, Plaintiff found it difficult to perform his tasks and has requested intermittent FMLA[2] leave on numerous occasions during his employment. Compl. ¶ 10.

**Plaintiff's FMLA Leave Requests**

Wyckoff's Human Resources ("HR") department is responsible for determining whether employees are entitled to FMLA leave. Def. 56.1 ¶ 165. Employees must have an eligible medical condition and worked a minimum of 1,250 hours in the prior 12-month period to qualify for FMLA leave. *See* 29 U.S.C. § 2611(A)(ii). Wyckoff also requires that employees include with their request medical information regarding, among other things, the "general nature and duration of treatment," or the "estimated number of days he will need to be absent from work per month." Def. 56.1 ¶ 10. To aid in determining an employee's eligibility, Wyckoff uses a

---

[1] The following facts are primarily derived from Defendants' 56.1 Statement ("Def. 56.1") (Doc. 61) and the exhibits attached to their Reply Brief in Further Support of Defendants' Motion for Summary Judgment ("Def. Reply") (Doc. 102). A significant portion of Plaintiff's Counter Statement of Material Facts in Opposition (Doc. 75) – which counsel filed late even after this Court granted him numerous extensions over a three-month period – was presented without "factual citations or other evidentiary support" and were thus stricken from Plaintiff's submissions for failure to abide by Local Civil Rule 56.1 for the Southern District of New York and Rule 1.G of this Court's Individual Rules of Practice. (Doc. 97).

[2] "Intermittent leave means leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks. Examples of intermittent leave would include leave taken on an occasional basis for medical appointments, or leave taken several days at a time spread over a period of six months, such as for chemotherapy." 29 C.F.R. § 825.102.

computerized time-keeping system to track employees' hours.  Def. 56.1 ¶ 16.  After an employee requests FMLA leave, Wyckoff sends the employee a letter informing him of its decision to grant or deny the request.  *See, e.g.*, Konkel Decl. Exs. MM, NN, PP, QQ.[3]  If Wyckoff denies the employee's request, the letter includes a reason for the denial, *e.g.* incomplete paperwork or failure to meet the minimum hours worked requirement.  If an employee is denied leave due to missing medical information, the employee can reapply once he is able to submit the requested documents.

If Wyckoff approves an employee's leave request, the letter includes the time period in which the employee is allowed to take leave.  The employee is entitled to a total of twelve workweeks of leave during any 12-month period.  29 U.S.C. § 2612(a)(1).  This leave can also be taken intermittently within the time frame allowed by Wyckoff.  Employees who have been granted intermittent FMLA leave must call in to take an intermittent FMLA day and "alert [a] supervisor in a timely manner."  Konkel Decl. Ex. MM.  "Failure to follow the call in process will result in the day not being included for FMLA purposes" and subjects the employee to disciplinary action.  Konkel Decl. Ex. WW.  The approval letter may also indicate whether the employee can request to extend the allotted time frame for his FMLA leave and provides whether additional medical information, *i.e.* a recertification, will be required.

On December 3, 2004, Wyckoff granted Plaintiff's intermittent FMLA request[4] allowing him intermittent leave from December 1, 2004 to December 1, 2005.  Konkel Decl. VV.  The

---

[3] References to the "Konkel Decl." refer to the Declaration of Mark A. Konkel, Esq. in Support of Defendant's Motion for Summary Judgment.  (Doc. 62).

[4] Importantly, the record does not include a single example of any of Plaintiff's FMLA leave requests.  As such, all of the information regarding Plaintiff's requests is derived from Wyckoff's response letters to those requests.  It is also unclear whether these response letters represent a complete record of Plaintiff's FMLA leave requests and

letter informed Plaintiff that he was entitled to take a maximum of twelve weeks of FMLA leave and was signed by Erick Salazar, a Manager in the Benefits department. *Id.* Plaintiff also received a similar letter on July 14, 2009[5] granting him intermittent leave from May 21, 2009 through November 20, 2009. Def. 56.1 ¶ 7. On November 29, 2010, Defendant informed Plaintiff that his FMLA request had been granted and would take effect from August 1, 2010 through February 28, 2011. Konkel Decl. Ex. WW. Defendant granted Plaintiff retroactive FMLA leave to account for the days that he had "been calling out and using intermittent FMLA days" prior to Defendant's grant of leave. This letter, sent by Joseph Foti, Defendant's Labor Relations Manager, also notified Plaintiff that if he wanted to "extend [his] leave past February 28, 2011," he was required to recertify by submitting "new FMLA documentation." *Id.* Plaintiff acknowledged receipt of this letter. Pl. Dep. Tr. 194:2-13.

Plaintiff alleges that he requested FMLA leave shortly after his leave expired on February 28, 2011. Pl. Opp. 10.[6] He acknowledged that he was late in filing his FMLA paperwork, Pl. Dep. Tr. 208:8-209:12, and claimed that Defendant Leisen requested that he undergo an Independent Medical Exam ("IME") in order to re-qualify for FMLA. Def. Reply Ex. A ¶ 84. Although he complied, Plaintiff claims that "for three months" he called Defendant Leisen, and other supervisors, to ask when his FMLA leave would be restored, but never received a response. Pl. Affidavit ¶ 9 (Doc. 76). He contends that Defendants' nonresponse hindered his ability to

_____

Wyckoff's responses. However, neither Plaintiff nor Defendants claim that this record of response letters is incomplete.

[5] There is no indication in the record that Plaintiff requested FMLA leave at any time between December 2005 and July 2009.

[6] Because the record does not include any of Plaintiff's FMLA requests, there is no document that supports the allegation that Plaintiff requested FMLA leave at that time. The record indicates that on June 7, 2010, Wyckoff denied Plaintiff's request because of incomplete medical information and on June 10, 2010, Wyckoff granted Plaintiff's request.

attain FMLA leave from February to June 2011.  Pl. Opp. at 10, 17.  However, Defendants claim

no recollection of the circumstances or the timeframe of this request, and Plaintiff provides no

documentary proof of his request.  Def. 56.1 ¶ 187.

By letter dated June 7, 2011, Defendant confirmed receipt of Plaintiff's intermittent

FMLA request and denied his request because of missing medical information.  Konkel Decl.

Ex. QQ.  On June 10, 2011, three days after Plaintiff was asked to provide more medical

information, Defendant granted Plaintiff intermittent leave for the period June 8, 2011 through

October 8, 2011.  Konkel Decl. Ex. PP.  Plaintiff's two subsequent requests for intermittent

FMLA leave were also granted:  from October 24, 2011 through February 25, 2012 and March 9,

2012 through July 10, 2012.  Def. 56.1 ¶¶ 13-14.

On August 2, 2012, Defendant sent a letter to Plaintiff informing him that his intermittent

FMLA request had been denied because he had not worked the requisite 1,250 hours in the

preceding 12-month period and was thus ineligible for FMLA leave.  Def. 56.1 ¶ 15.  Using its

computer time-keeping system, Defendant determined that during the previous twelve-month

period, Plaintiff had only worked 1,120.75 hours.  Def. 56.1 ¶¶ 16-17.  In the letter, Defendant

also suggested that Plaintiff contact his director "to discuss any reasonable accommodations and

options available," including a "change of employment status from full-time to part time."

Konkel Decl. Ex. K.  Plaintiff acknowledged that Defendant's denial of his leave request was

"legitimate" because he had not worked the requisite hours.  Def. 56.1 ¶ 18.

After Plaintiff was denied FMLA leave, his Union, on his behalf, requested that his work

schedule be changed to a part-time position to accommodate his medical condition.  While in a

meeting with Mr. Foti and his Union representative, Plaintiff also requested that he be reinstated

to a full-time position immediately upon his request.  Def. 56.1 ¶¶ 20-21; Foti Dep. Tr. 95:10-96:11.  Both Plaintiff's Union representative and Defendant informed Plaintiff that his request violated the Union contract.  Foti Dep. Tr. 95:10-96:11.  Wyckoff explained that it could not assure him that he would be reinstated to full time upon his request.  Def. 56.1 ¶ 21.  Instead, Wyckoff proposed to change his status to part time and reinstate his full time status after one year, on the condition that Plaintiff no longer required the accommodation and a full-time position was available.  Def. 56.1 ¶ 25.  On October 23, 2012, Wyckoff sent Plaintiff a letter memorializing this proposal.  Konkel Decl. Ex. YY.  Neither Plaintiff nor the Union responded to Defendant's proposal.  *Id.*

**Plaintiff's Absences**

Wyckoff's attendance policy prohibits excessive absences, defined as "[t]wo or more absences in a one month period or five or more absences in a six month period."  Def. 56.1 ¶¶ 50, 51.  During Plaintiff's employment, Plaintiff was counseled and warned numerous times regarding his violation of Defendant's attendance policy:

- September 18, 2007:  Plaintiff received a counseling session for using twelve sick days in a six-month period.  Def. 56.1 ¶ 29.  Plaintiff was informed that "the pattern of extending time off or weekends constituted an abuse of his sick time" and that further abuses "would result in disciplinary action."  He admitted to the absences and signed off on the resulting discipline.  Konkel Decl. Ex. CC.

- January 27, 2009:  Plaintiff was issued a written warning for using seven sick days since December 1, 2008, "despite having exhausted his sick leave."  Konkel Decl. Ex. BB.

- March 24, 2009:  Plaintiff was issued a "Final Warning" for using eight sick days in a three-month period.  Konkel Decl. Ex. AA.

- April 24, 2009:  Plaintiff received a disciplinary notice and suspension for one day for using six sick days in less than two months.  He was informed that he had not "shown any improvement" in his behavior and advised that further attendance infractions would lead to disciplinary action, not excluding discharge.  Konkel Decl. Ex. Z.

- July 29, 2010:  Plaintiff was issued a "Final Warning" for failing to report to work for his scheduled shift and "adversely" affecting patient care.  Konkel Decl. Ex. X.

- September 14, 2010:  Plaintiff was suspended for five days without pay for failing to report to work on August 25, 2010.  The notice, signed by Defendant Leisen, stated that Plaintiff "failed to notify" Defendant of his absence and indicated that this was Plaintiff's third "such occurrence."  The notice also included a warning that "continued infractions would result in progressive disciplinary action, up to and including termination."  Konkel Decl. Ex. RR.

On May 27, 2011, Plaintiff was suspended for five days without pay for taking more than fifteen days off within a three-month period.  Konkel Decl. Ex. W.  Plaintiff claimed that approximately two days before his suspension, he told Defendant Leisen that he would obtain the necessary recertification documents, but was suspended before he was able to submit the documents.  Pl. Affidavit at 3.  After his suspension, Plaintiff requested a grievance hearing to contest his suspension on the basis that he believed he was still entitled to intermittent FMLA leave during that time.  However, Defendant denied the grievance because Plaintiff had received the November 29, 2010 letter granting him intermittent leave, was aware "that the leave would expire on March 1, 2011, and knew "the course of action necessary to request a new leave but failed to do so."  Konkel Decl. OO.

## Plaintiff's Behavior towards Patients and Coworkers[7]

All employees at Wyckoff are required to abide by the "Employee Service and Behavior guidelines."  These guidelines were made available to Plaintiff at the outset of his employment and he acknowledged that he understood and agreed to obey them.  Def. 56.1 ¶ 103.  In addition

---

[7] In addition to being subjected to disciplinary actions for his absences and inappropriate behavior towards coworkers, Plaintiff was also counseled for leaving his workstation without permission.  The counseling memorandum states that Plaintiff would be monitored and further disciplinary actions would be taken if Plaintiff repeated this behavior.  Konkel Decl. Ex. Y.

to the guidelines, Plaintiff also received annual employee training, including training on

Wyckoff's Code of Conduct.  Def. 56.1 ¶ 103.  Notwithstanding his knowledge of Wyckoff's

policies, Plaintiff was repeatedly disciplined for engaging in inappropriate and disruptive

behavior towards patients and his coworkers:

- May 3, 2006:  Plaintiff was suspended for one day for being verbally abusive towards a coworker in the presence of a patient by "cursing, calling her names and repeatedly using the 'F' word".  Konkel Decl. Ex. DD.  Defendant explicitly informed him that "his behavior would not be tolerated and future infractions would lead to termination."  Def. 56.1 ¶ 70.

- November 29, 2006:  Plaintiff received a "Final Warning" and a five day suspension for "verbally chastising" and demanding "an apology" from a coworker in front of a patient. Plaintiff was once again informed that "further infractions" would "lead to termination." Konkel Decl. Ex. EE.

- April 3, 2008:  Plaintiff received a five-day suspension for "inappropriate and disruptive behavior" with coworkers.  The notice stated that his behavior was having a "negative impact on the department" and that Plaintiff had already been "counseled for past infractions of this nature."  Konkel Decl. Ex. TT.

Although Plaintiff acted inappropriately towards several coworkers, he was disciplined

on multiple occasions for his unprofessional behavior specifically towards two coworkers, Jason

Cephas and Gina Antignani, including, for example:

- On March 21, 2008, Mr. Cephas submitted a letter alleging that Plaintiff cursed at him, telling him to move his chair "out of the fucking department," "grow the fuck up," and "go fuck yourself."  Mr. Cephas claimed that Plaintiff complained about him to a supervisor and that they were both warned about their behavior.[8]  Konkel Decl. Ex. UU.

- On January 12, 2012, Ms. Antignani submitted a written statement alleging that Plaintiff had harassed her by referring to her in front of coworkers and patients as his "supervisor."  Ms. Antignani is not Plaintiff's supervisor.  She claimed that her supervisors spoke to Plaintiff about this behavior and stated that it made the "work environment uncomfortable."  Konkel Decl. Ex. KK.

---

[8] It is unclear if the disciplinary notice Plaintiff received on April 3, 2008 references this series of events.

- On January 25, 2012, Martha Chin, a Supervisor in Radiology, submitted a letter stating that she had to "verbally chastise" Plaintiff for "constantly provoking Ms. Antignani" by calling her a supervisor.  Ms. Chin added that she had witnessed Ms. Antignani "voicing her displeasure" and telling him to stop.  Konkel Decl. Ex. LL.

- On February 14, 2012, Mr. Foti sent Plaintiff a memorandum providing the results of an investigation of Ms. Antignani's harassment allegations.  During the investigation, Plaintiff admitted to referring to Ms. Antignani as his supervisor and "falsely informing people that she was [his] supervisor" because he felt that she was receiving "preferential treatment."  Konkel Decl. Ex. JJ.  Mr. Foti instructed Plaintiff to "cease all non-work required conversations" with Ms. Antignani and informed him that both of them would be monitored.

- On October 5, 2012, Mr. Cephas alleged that, Plaintiff attempted to push a chair past Mr. Cephas though there was plenty of room for Plaintiff to walk around Mr. Cephas without any contact.  Mr. Cephas claimed that Plaintiff said "excuse me," but when Mr. Cephas did not respond, Plaintiff stated "you want to be an asshole anyway."  Konkel Decl. Ex. II.

- On November 13, 2012, Plaintiff received a disciplinary notice and "Final Warning" for his behavior towards Mr. Cephas.  Def. 56.1 ¶ 94.

- On November 14, 2012, Ms. Antignani submitted a written statement alleging that Plaintiff had, in front of a patient's mother, volunteered her to perform an exam that another technologist was assigned to perform.  When Harold Elisee, the other technologist arrived, the patient's mother refused his help and requested Ms. Antignani.  She claimed that Plaintiff did this often and that it resulted in "too much conflict" for the patients and the technologists.  Konkel Declaration Ex. Q.

- Two other technologists submitted letters confirming Ms. Antignani's story.  *See, e.g.*, Konkel Decl. Exs. R, S, T.  One of the technologists added that he was a witness to Plaintiff's constant "berating" of Ms. Antigiani and Mr. Cephas.  Konkel Decl. Ex. R.  Mr. Elisee also submitted a letter in which he made no mention of Plaintiff and explained that the patient was not cooperating and that the mother asked him to call Ms. Antignani to perform the X-ray.  Konkel Decl. Ex. T.

- On November 15, 2012, Mr. Cephas submitted a written statement alleging that Plaintiff sat next to him and loudly and repeatedly stated "God does not like ugly!"  Konkel Decl. Ex. O.  He also claimed that had been "victimized" by Plaintiff's "malicious efforts" to make his time at Wyckoff miserable.  *Id.*  Ms. Antignani also submitted a letter confirming Mr. Cephas's story.  Konkel Decl. Ex. P.

- On November 19, 2012, Mr. Cephas submitted a written statement alleging that Plaintiff had aggressively pushed a chair past him and caused him to "tilt over."  Konkel Decl. Ex. N.

Plaintiff alleges that Defendant Leisen did not make him aware of any of these statements and that he was never given an opportunity to rebut them.  Pl. Opp. at 1.  Defendants contend, however, that Wyckoff has no rule entitling Plaintiff to review complaints made against him.  Plaintiff also claimed that Defendant Leisen targeted him for termination.  Pl. Opp. at 12-13.

**Plaintiff's Termination**

Defendant terminated Plaintiff's employment on November 27, 2012.  Def. 56.1 ¶ 129.  The final disciplinary notice, signed by Defendant Leisen, listed Plaintiff's behavior towards Ms. Antignani and Mr. Cephas as the reasons for termination.  Konkel Decl. Ex. M.  The notice made no mention of the number of times Plaintiff took FMLA leave or the number of warnings he received for violations of the attendance policy.  Plaintiff, with the help of his Union representative, requested a grievance hearing to contest his November 13, 2012 Final Warning and his termination.  On December 17, 2012, one of Plaintiff's supervisors received an email from the patient's mother explaining what had occurred on November 14, 2012.  Declaration of Anthony Ofodile in Opposition Ex. 4 (Doc. 79).  She stated that Plaintiff had recommended Ms. Antignani because she was "super talented with kids" and he had noticed that her child was afraid of the procedure.  She thanked Plaintiff for his "rapid assessment of the situation" and expressed her regret that Plaintiff had been terminated.  *Id.*  On December 31, 2012, Defendant concluded that Plaintiff was "guilty of the charges contained in the disciplinary notices" and denied Plaintiff's grievance.  Konkel Decl. Ex. J.

## II.   **Procedural History**

Plaintiff filed a complaint with the Equal Employment Opportunities Commission and received a right to sue letter on August 16, 2013.  Plaintiff timely filed a *pro se* complaint on

November 15, 2013.  On June 6, 2014, after securing counsel, Plaintiff filed an Amended

Complaint asserting ten claims stemming from his May 27, 2011 five-day suspension and his

November 27, 2012 termination.   Specifically, Plaintiff argued that by suspending him in May

2011 for violating the attendance policy, Defendants interfered with Plaintiff's right to leave

under the FMLA (Count One); retaliated against him for exercising his rights pursuant to the

FMLA (Count Two), ADA (Count Four), and NYSHRL and NYCHRL (Count Six); and denied

Plaintiff reasonable accommodation in violation of the ADA (Count Three) and the NYSHRL

and NYCHRL (Count Five).  Additionally, Plaintiff claimed that by terminating him, Defendants

interfered with Plaintiff's FMLA rights (Count Seven); retaliated against Plaintiff for exercising

his rights pursuant to the FMLA (Count Eight) and ADA (Count Nine); and failed to

accommodate Plaintiff's medical condition in violation of the ADA (Count Nine) and the

NYSHRL and NYCHRL (Count Ten).

## III.   Legal Standard:

### A.  General Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno*

*v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint*

*Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might

"affect the outcome of the litigation under the governing law."  *Id.* (quoting *Miner v. Clinton Cty.*

*N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)).  The party moving for summary judgment is first

responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party

must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).  "[W]hen an employer provides convincing evidence to explain its conduct and the plaintiff's argument

consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citing *Budde v. H & K Distrib. Co.*, 216 F.3d 1071 (2d Cir. 2000)).

## IV.   Discussion

### A. Abandonment

As an initial matter, Defendants ask the Court to find that Plaintiff has abandoned his ADA, NYSHRL, and NYCHRL claims by failing to address any of the arguments concerning those claims made in their summary judgment motion. Def. Reply at 2-3. Courts have regularly dismissed claims as abandoned where a plaintiff has failed to address them in opposing defendant's dispositive motions. *See Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (collecting cases in which courts deemed plaintiff's claims abandoned for failure to address defendant's arguments). Importantly, this decision is discretionary – not mandatory – allowing courts to proceed to the merits of defendant's arguments despite the lack of opposition. *See, e.g.*, *Sternkopf v. White Plains Hosp.*, No. 14-cv-4076 (CS), 2015 WL 5692183, at *8 (S.D.N.Y. Sept. 25, 2015) (addressing the merits of defendant's exhaustion defense even though plaintiff failed to address the argument in his opposition).

Here, Plaintiff's twenty-three page response brief is entirely devoid of any mention of Defendant's alleged violations of the ADA. The bulk of Plaintiff's arguments are related to the alleged FMLA violations. It is only on the penultimate page of Plaintiff's brief that he affirmatively asserts, and only in patently conclusory fashion, that the record shows evidence of "prextext and intentional discrimination." Plaintiff cites to no admissible evidence in the record in support of this assertion. Further, Plaintiff asserts his reasonable accommodation claim solely

as a violation of the NYSHRL and NYCHRL.  Thus, because Plaintiff addresses his FMLA claims, failure to accommodate claim pursuant to the NYSHRL and NYCHRL, and a general discrimination claim, the Court finds that Plaintiff has abandoned only his failure to accommodate (Count Three) and retaliation (Count Four) claims pursuant to the ADA, and his retaliation (Count Six) and discrimination (Count Ten) claims pursuant to the NYSHRL and NYCHRL.

### B.  FMLA Claims

#### i.  Statute of Limitations

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the statute.  29 U.S.C. § 2615(a)(1).  FMLA claims are subject to a two-year statute of limitations, unless the violation was "willful," in which case a three-year statute of limitations applies.  29 U.S.C. § 2617(c)(1)-(2).  For an employer's violation to be willful, a plaintiff must demonstrate that the employer "knew or showed reckless disregard" for whether its conduct was prohibited by the FMLA.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  If an employer acts reasonably, or in the alternative, unreasonably but not recklessly, in determining its legal obligation, the employer's action cannot be deemed willful.  *See Offor v. Mercy Med. Ctr.*, No. 15-cv-2219 (ADS) (SIL), 2016 WL 929350, at *21 (E.D.N.Y. Mar. 10, 2016) (citing *McLaughlin,* 486 U.S. at 135 n.13).  Here, Plaintiff claims that the three-year statute of limitations applies because Defendants intentionally violated the FMLA when (1) in late May 2011, Defendant Leisen did not allow Plaintiff the requisite fifteen day extension to acquire a

medical note for recertification before suspending him and (2) when Defendants did not timely inform Plaintiff of the result of his IME.  Pl. Opp. at 18.[9]

The Court disagrees.  Plaintiff's fifteen day requirement claim is derived not from the FMLA itself, but rather from regulations that implement it.  The particular regulation provides that "[t]he employee must provide the requested recertification to the employer within the time frame requested by the employer (which must allow at least fifteen calendar days after the employer's request) . . . ."  29 C.F.R. § 825.308(d).[10]  Here, Defendant made a clear request for new FMLA documentation in its November 29, 2010 letter, more than three months before the intermittent leave Plaintiff had been granted was set to expire.  Konkel Decl. Ex. WW.  It follows that Plaintiff, who acknowledged receipt of the notice, had ample time to acquire the necessary documents for recertification.  Plaintiff's argument is further undermined by his concession at his deposition that he "made a mistake" by submitting his recertification paperwork late.  Pl. Dep. Tr. 208:8 – 209:12.

Plaintiff also points to no evidence in the record to indicate that Defendant Leisen unreasonably or recklessly requested an IME or delayed notifying him of the results.  First, Defendant Leisen's request for the IME was entirely lawful.  *See* 29 U.S.C. § 2613(a) (allowing employer to require that an employee's request for leave "be supported by a certification issued by a health care provider").  Second, although Plaintiff claimed that he spent three months asking his supervisors about the results of his IME, the record indicates that Defendant granted his

---

[9] References to "Pl. Opp." refer to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.  (Doc. 78).

[10] Plaintiff provides no authority to support his claim that a three year statute of limitations applies in this case.  Plaintiff's reliance on *Bass v. Potter*, 522 F.3d 1098 (10th Cir. 2008), a nonbinding decision from the 10th Circuit in which a willful violation was actually not found, is unavailing.

FMLA leave request just three days after it notified Plaintiff that his paperwork was incomplete. *See Offor*, 2016 WL 929350, at \*22 (holding that no willful violation had occurred because, among other things, Defendant ultimately granted Plaintiff's request and was thus not denied any benefits). Thus, Plaintiff's claim that he was improperly denied FMLA leave between March 1, 2011 and June 9, 2011 is both incorrect and unsupported by the record.

Because Plaintiff is unable to show that Defendants acted intentionally or willfully, the two-year statute of limitations applies to all of Plaintiff's FMLA claims and accordingly the claims relating to his May 2011 suspension (Counts One and Two) are time-barred.

### ii.    Interference

Plaintiff also argues that Defendant interfered with his FMLA rights by requiring Plaintiff to recertify before approving an extension to his February 2011 FMLA leave and denying his August 2012 leave request in violation of 29 U.S.C. § 2615(a)(1). Pl. Opp. at 19-20. To prevail on a claim of interference, Plaintiff must establish that (1) he is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) Plaintiff was entitled to take leave under the FMLA; (4) he gave notice to the Defendant of his intention to take leave; and (5) he was denied benefits to which he was entitled under the FMLA. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). There is no question that Plaintiff was an eligible employee and was entitled to take FMLA leave. In fact, Defendant specifically notified Plaintiff that he was entitled to extend his FMLA leave past the February 28, 2011 end date. Konkel Decl. Ex. WW. At issue here is whether by requesting a recertification and additional medical records before approval of the extension, Defendant interfered with Plaintiff's FMLA benefits to which he was entitled.

The FMLA allows Defendant to request, on a reasonable basis, recertifications, including additional exams and medical records, before granting FMLA leave.  *See* 29 U.S.C. § 2613. ("The employer may require that the eligible employee obtain subsequent recertifications on a reasonable basis.").  Section 825.308(b) – on which Plaintiff relies – allows the employer to request recertification every thirty days unless the minimum duration of the condition is more than thirty days but less than six months.  For a condition that lasts more than six months, an employer is allowed to seek recertification every six months.  *See* 29 C.F.R 825.308(b).  Here, Defendant gave Plaintiff three months' notice in its November 29, 2011 letter that he needed to recertify for any leave extending beyond February 28, 2012.  Further, Plaintiff does not contend, and nothing in the record suggests, that he provided a medical certification stating that his condition left him "unable to work, whether continuously or on an intermittent basis" for at least six months, therefore entitling him to recertification in six month intervals.  *Id.*  Thus, Defendant's denial of Plaintiff's request for his failure to provide recertification paperwork did not deny Plaintiff a benefit to which he was entitled.

Plaintiff's interference claim based on his denial of FMLA leave in August 2012 is similarly deficient.[11]  It cannot be contested that Plaintiff did not work the requisite hours to qualify for FMLA leave over the previous twelve months.  *See* 29 U.S.C. §2611(A)(ii).  At his deposition, Plaintiff stated that Defendant's denial of his FMLA request was "legitimate" because he had not worked the requisite number of hours.  Def. 56.1 ¶ 18.  As such, Plaintiff was

---

[11] Plaintiff also claims that Defendant interfered with his FMLA rights by forcing him to work part time even after he was eligible for FMLA leave.  Pl. Opp. at 15-16.  However, Plaintiff provides no basis for this claim.  The record indicates that Wyckoff did not "force" Plaintiff to work a part-time schedule, but rather it was Plaintiff's Union that suggested this accommodation be made.  Further, the record does not indicate that Plaintiff reapplied for FMLA leave upon working the requisite hours and becoming eligible before he was terminated.

not a qualified employee, and thus Defendant did not interfere with or deny Plaintiff a benefit to which he was entitled.

### iii.    Retaliation

Plaintiff alleges that his November 2012 termination was in retaliation for Plaintiff's FMLA leave requests.  Pl. Opp. at 20.  Retaliation claims pursuant to the FMLA are analyzed under the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam) (applying *McDonnell Douglas* to FMLA retaliation claim).  Under the *McDonnell Douglas* framework, a plaintiff alleging retaliation must first establish a *prima facie* case of retaliation.  *McDonnell Douglas*, 411 U.S. at 802.  Though at this stage, a plaintiff's burden is *de minimus*, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of [retaliatory] motive," *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002), and "cannot meet this burden through reliance on unsupported assertions."  *Goenaga*, 51 F.3d at 18.

If a plaintiff successfully presents a *prima facie* case of retaliation, the defendant must then rebut the presumption by offering legitimate and non-discriminatory reasons for the adverse employment action demonstrated in plaintiff's *prima facie* case.  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001).  To meet this burden, an "employer need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior."  *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis in original).  If the employer is able to do so, the burden then shifts back to the plaintiff to prove retaliation by a preponderance of the

evidence.  *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115

F.3d 116, 121 (2d Cir. 1997).

To establish a *prima facie* case for retaliation, Plaintiff must show that (1) he exercised

rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse

employment action; and (4) the adverse employment action occurred under circumstances giving

rise to an inference of retaliatory intent.  *See Potenza*, 365 F.3d at 168.  The parties do not

dispute that Plaintiff requested FMLA leave on multiple occasions, was qualified for his position

as an X-ray technologist, and that he was ultimately terminated.  *See Chung v. City of New York*,

605 F. App'x. 20, 22 (2d Cir. 2015) (noting that adverse employment actions include

"termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, or a material loss of benefits").  At issue here is whether Plaintiff's

termination occurred under circumstances giving rise to an inference of retaliatory intent.

Retaliatory intent between the protected activity and the adverse employment action can

be established (1) indirectly through a showing that the protected activity was followed closely

by discriminatory treatment; (2) indirectly through other evidence such as disparate treatment of

similarly-situated employees; or (3) directly through a showing of evidence of retaliatory animus

toward plaintiff by defendant.  *Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York*,

107 F. Supp. 3d 323, 328-29 (S.D.N.Y. 2015).

Here, Plaintiff attempts to show an inference of retaliatory intent by arguing that

Defendant Leisen disciplined Plaintiff on numerous occasions for using his intermittent FMLA

leave.  Pl. Opp. at 20-21.[12]  However, the record indicates that only the September 14, 2010

suspension, for being absent on August 25, 2010 in violation of the attendance policy, occurred

while Plaintiff was entitled to intermittent leave and that he did not properly notify Defendant

that he was exercising his right.  That is to say, Plaintiff could have taken the day as FMLA leave

if he had given proper notice of his intention to do so.  In fact, the disciplinary notice specifically

states that Plaintiff "failed to notify" Defendant of his absence in a timely manner.  Konkel Ex.

RR.  Additionally, the record is laden with evidence that Plaintiff was repeatedly granted FMLA

leave upon request – even after Plaintiff's leave was not extended in February 2011 – negating

any inference that Plaintiff's termination was retaliatory.  *See Woldeselassie v. Am. Eagle*

*Airlines/Am. Airlines*, No. 12-cv-7703 (LGS), 2015 WL 456679, at *12 (S.D.N.Y. Feb. 2, 2015),

---

[12] Plaintiff also loosely attempts to establish an inference of retaliatory motive by claiming disparate treatment.  *See* Pl. Opp. at 4.  To establish disparate treatment, Plaintiff must show that he was "similarly situated" in all material respects' to individuals with whom he seeks to compare himself.  *See Graham v. L.I.R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also Hakeem v. Parkinson*, 523 F. App'x. 19, 20 (2d Cir. 2013) (requiring a showing "that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group").

As evidence, Plaintiff compares himself to Mr. Cephas and notes that Mr. Cephas also had numerous infractions, including "excessive absenteeism," "calling out sick," "extending weekends," cellphone use, and "unnecessarily exposing a patient to lead [and] radiation," for which he received only counseling and warnings.  Pl. Opp. at 4.  In response, Defendants claim Mr. Cephas was not similarly situated, in that he was disciplined by supervisors different from those who supervised Plaintiff, and Plaintiff's "history of discipline" far exceeded Mr. Cephas's. Def. Reply at 8.

The Court agrees.  Courts have regularly found that coworkers that report to different supervisors are not similarly situated.  *See, e.g.*, *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 466 (S.D.N.Y. 2006) (finding that plaintiff was not similarly situated to coworker because a "different decisionmaker was responsible for investigating and determining how to discipline" the coworker); *Gambrell v. Nat'l R.R. Passenger Corp.*, 2003 WL 282182, at *7 n.12 (S.D.N.Y. Feb. 3, 2003) (finding that when plaintiff reports to "wholly different supervisors" the strength of the inference different treatment raises is "greatly weaken [ed]").  Additionally, although the record indicates that Mr. Cephas did violate Wyckoff's attendance policy on multiple occasions (Leisen Deposition Transcript 29:22- 42:08), the record does not reflect that Mr. Cephas was also disciplined for harassing or inappropriately treating his coworkers, the only cited reason for Plaintiff's termination.  Because Mr. Cephas did not engage in behavior of comparable seriousness, Mr. Cephas is not similarly situated to Plaintiff in all material respects.  *See Graham*, 230 F.3d at 40 (holding that to constitute "all material respects," a court must consider "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) *whether the conduct for which the employer imposed discipline was of comparable seriousness*") (emphasis added).

*aff'd sub nom. Woldeselassie v. Am. Eagle Airlines, Inc.*, No. 15-cv-0421, 2016 WL 1613028 (2d Cir. Apr. 22, 2016) (finding that defendant's repeated grants of FMLA leave even after a denial of plaintiff's request negated inference of retaliatory motive).  Defendant even granted Plaintiff retroactive leave to account for the days he missed work without being entitled to FMLA leave. Konkel Decl. WW.

Additionally, Defendant's denial of Plaintiff's FMLA leave in August 2012 is too remote from Plaintiff's termination in November 2012 to establish an inference of retaliatory motive. *See Galimore v. City Univ. of N.Y. Bronx Cmty. College*, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (citing *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.")).

Even assuming Plaintiff is able to establish a *prima facie* case, Plaintiff's claims would still fail because he is unable to show that Defendants stated reasons for terminating him were pretextual.  Here, Defendants claim that Plaintiff was ultimately terminated due to his "extensive documented history of disciplinary issues."  Def. Memo. at 16.  Although Defendants' burden is light at this stage, Defendants provide no less than twenty-five examples of coworker complaints and statements, Wyckoff disciplinary notices, counseling sessions regarding Plaintiff's inappropriate and unprofessional behavior while at Wyckoff – more than twelve of which relate directly to his behavior towards Ms. Antignani and Mr. Cephas – and a "Final Warning" given two weeks prior to his termination, which was followed by three additional documented instances of misconduct.

In response, Plaintiff relies largely on conclusory statements about Wyckoff employees and Defendant Leisen keeping secret files on him to challenge Defendants' proffered reasons for his termination.[13]   *See* Pl. Dep. Tr. 216:4-19 (stating that the basis for his belief that secret files were kept only on him was "an emotional belief, no factual evidence").   However, nothing in the record supports Plaintiff's contention that he was entitled to review the complaints made against him by coworkers.   More to the point, the record amply demonstrates that Plaintiff actually received disciplinary notices and was made aware of and reprimanded for his inappropriate behavior towards Ms. Antignani and Mr. Cephas.   *See* Konkel Decl. Ex. JJ; Def. 56.1 ¶ 94.   Accordingly, Defendants are entitled to summary judgment.   *See Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 320 (S.D.N.Y. 2012) (citing *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988) ("[T]o rebut an employer's proffered [] rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight.")).

### C.  ADA Discrimination Claim

Plaintiff's claim of employment discrimination in violation of the ADA is also analyzed under the *McDonell Douglas* three step burden-shifting analysis.   *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (applying *McDonnell Douglas* to ADA discrimination claim).   However*,* case law makes clear that the court may assume that a plaintiff has established a *prima facie* case and "skip to the final step in the analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action." *Sattar v. Johnson*, 129 F. Supp. 3d 123, 138 (S.D.N.Y. 2015) (declining to determine whether plaintiff

---

[13] Plaintiff also relies on an email submitted by a patient's mother explaining the incident on November 14, 2012 with Ms. Antignani to disprove Defendants' reasons for termination.  He claims that Defendant Leisen disregarded the "truth" about what happened that day.  Pl. Memo. at 11.  However, nothing in the record supports this claim.

established a *prima facie* case for Title VII and ADEA claims because defendant had provided a legitimate reason why plaintiff was not hired); *see also Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (declining to decide whether a prima facie case was made out because defendant "met its burden to put forth legitimate, nondiscriminatory reasons for [plaintiff's] termination, and [plaintiff] has failed as a matter of law to proffer evidence of pretext sufficient to go to a trier of fact").

Thus, even assuming that Plaintiff can establish a *prima facie* case of discrimination, as the Court already noted, Plaintiff's claim fails because Defendants have presented legitimate non-retaliatory reasons for his suspension and termination.  Plaintiff's attempts to establish pretext by alleging that Defendant failed to notify Plaintiff of the complaints "put in his file," and that Plaintiff's supervisors did not seek to have Plaintiff disciplined for his harassing behavior prior to his termination, are simply unsupported by the record.  Accordingly, Defendant's motion for summary judgment on Plaintiff's discrimination claim is GRANTED.

### D.  **State and City Claims**

Defendants have also moved for summary judgment on Plaintiff's state and city law claims.  Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state and city law claims.  *Kolari v. N. Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having dismissed Plaintiff's sole federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state and city law claims. *See* 28 U.S.C. § 1367(c)(3). Thus, they are likewise DISMISSED.

**V.   <u>Conclusion</u>**

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 59, and close the case.


It is SO ORDERED.


Dated:   September 23, 2016
         New York, New York

                                             _____
                                             Edgardo Ramos, U.S.D.J.